**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MOHAMMAD SOHAIL SALEEM, | : | Civil No. 3:19-cv-25 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| CORRECTIONS OFFICER BRUNGART, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Mohammad Sohail Saleem ("Saleem"), an inmate housed at the Rockview

State Correctional Institution, Bellefonte, Pennsylvania, ("SCI-Rockview"), initiated this civil

rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are

Superintendent Garman, Deputy Superintendent McMahon, Deputy Superintendent Houser,

Correctional Officer Brungart, Sergeant Glass, Program Manager Miller, Hearing Examiner

Pilosi, Chief Hearing Examiner Dupont, and four (4) John Doe Defendants.

Presently ripe for disposition is Defendants' motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment pursuant to

Federal Rule of Civil Procedure 56. (Doc. 12). For the reasons set forth below, the Court

will grant Defendants' motion. The Court will also dismiss the action against the John Doe

Defendants pursuant to Federal Rule of Civil Procedure 4(m).

## I.    Allegations of the Complaint

Saleem alleges that, on June 26, 2017, he was lying in his bunk reading religious materials. (Doc. 1 ¶¶ 17-20, 43). Saleem alleges that Defendant Brungart opened his cell door at the request of fellow inmate Nifas. (*Id.* at ¶ 19). Once the cell door opened, Saleem was allegedly assaulted by inmate Nifas with a makeshift knife. (*Id.* at ¶¶ 20-21). Saleem contends that his cellmate ran out of the cell and sought help from Defendants Brungart and Glass, but they failed to respond. (*Id.* at ¶¶ 21-25).

Saleem further alleges that Defendant Glass saw Defendant Brungart open the cell door to allow inmate Nifas inside the cell and did not stop Brungart from opening the cell door. (*Id.* at ¶¶ 61-63). During the assault, Defendant Glass allegedly referred to Saleem as a "terrorist" due to his religious beliefs as a follower of the Islamic faith. (*Id.* at ¶¶ 75-76). Saleem further alleges that Defendant Glass witnessed the assault by inmate Nifas but failed to help Saleem. (*Id.* at ¶¶ 63, 77-80).

Saleem eventually escaped from his cell, he trapped inmate Nifas inside the cell, and called for help from Defendants Brungart and Glass, who allegedly laughed at his request for help. (*Id.* at ¶¶ 25-26). Saleem alleges that he was eventually sprayed with oleoresin capsicum ("O.C.") spray by two (2) unknown officers. (*Id.* at ¶¶ 27-28). Three (3) unknown officers then transported Saleem to the medical department. (*Id.* at ¶ 29). He was seen by medical staff, but no treatment was rendered. (*Id.*). Saleem asserts that he cleaned his own wounds. (*Id.* at ¶ 30).

On June 27, 2017, Defendant Brungart issued misconduct number C081856 stating that Saleem and his attacker were exchanging punches in a fight inside Saleem's cell. (*Id.* at ¶ 30). On June 28, 2017, Hearing Examiner Pilosi conducted a hearing on the misconduct charges. (*Id.* at ¶¶ 31, 83-84). Saleem asserts that he asked Defendant Pilosi to review video footage, which would show Defendant Brungart opening the cell door for his attacker. (*Id.* at ¶ 85). Defendant Pilosi allegedly refused to review the video. (*Id.* at ¶ 86). On June 28, 2017, Defendant Pilosi found Saleem guilty of the misconduct charges. (*Id.* at ¶¶ 31, 32). Defendant Pilosi sanctioned Saleem with placement in disciplinary custody for thirty (30) days. (*Id.* at ¶ 32). On June 28, 2017, Saleem appealed the Hearing Examiner's decision to the Program Review Committee ("PRC"), consisting of Defendants McMahon, Houser, and Miller. (*Id.* at ¶¶ 33, 34). On July 6, 2017, the PRC upheld the Hearing Examiner's decision. (*Id.* at ¶ 35). Saleem alleges that Defendants McMahon, Houser, and Miller failed to review the video footage. (*Id.* at ¶¶ 115-17, 126-28, 137-38). Saleem appealed the PRC's decision to Superintendent Garman, who upheld the previous decisions and did not review the video. (*Id.* at ¶¶ 36, 150-51, 154-55). Saleem then filed an appeal to the Office of the Chief Hearing Examiner, Defendant DuPont, who upheld all previous decisions and also did not review the video. (*Id.* at ¶¶ 37, 166-68).

## II.    Legal Standards

### A.    Summary Judgment Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## B.     Rule 12(b)(6) Standard

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'"  *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## III. Discussion

### A. Exhaustion of Administrative Review

Defendants argue that the only properly exhausted claim in this action is Saleem's

claim that Defendant Brungart issued a false misconduct against him. (Doc. 20, pp. 7-12).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to

pursue all avenues of relief available within the prison's grievance system before bringing a

federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v.

Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement

of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). Failure to identify a named defendant on a

grievance form, absent a "justifiable excuse," constitutes failure to properly exhaust as to that defendant. *Williams v. Pa. Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005) (non-precedential). Finally, whether an inmate has properly exhausted administrative remedies is a question of law that is to be determined by the Court, even if that determination requires the resolution of disputed facts. *See Small v. Camden County*, 728 F.3d 265, 268 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).[1]

The Pennsylvania Department of Corrections has three different administrative remedy processes which collectively provide an inmate a route to challenge every aspect of confinement. *See Fortune v. Bitner*, 2006 WL 2796158, at *7 (M.D. Pa. Sep. 25, 2006). Those policies are: (1) the Inmate Grievance Policy, Administrative Directive ("DC-ADM") 804; (2) the Inmate Discipline Policy, DC-ADM 801; and (3) the Administrative Custody policy, DC-ADM 802. *See* PA. DEP'T OF CORR., Policies, https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx (last visited March 5, 2020). The three programs address specific issues which may arise within the prison, and one administrative remedy may not be substituted for the other. *Fortune*, 2006 WL 2796158, at *7. An inmate who has received a misconduct citation, i.e., a violation of DOC rules and regulations with a resulting disciplinary measure, and seeks to appeal that misconduct or allege a grievance in connection with the events surrounding that misconduct, must use

---

[1]    In accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Court placed the parties on notice that it would consider exhaustion in its role as fact finder and afforded the parties the opportunity to be heard under *Small*, 728 F.3d at 268. (Doc. 27).

DC-ADM 801.  *See id.* DC-ADM 801.  DC-ADM 802 is similar, but applies to inmates in administrative custody.  *See id.* DC-ADM 802.  DC-ADM 804 applies to all inmate grievances not connected with a misconduct citation.  *See id.* DC-ADM 804.

Pursuant to DC-ADM 801, if a misconduct is issued to an inmate, a hearing examiner will hold a misconduct hearing.  (PA. DEP'T OF CORR., Policy Statement, DC-ADM 801, Inmate Discipline, Section 3.A.1).  If the inmate is found guilty of a misconduct charge, he may appeal the decision to the Program Review Committee within fifteen (15) calendar days of the hearing.  (DC-ADM 801, Section 5.A.1).  If the inmate is dissatisfied with the PRC's response, he may appeal to the Facility Manager of the facility within seven (7) calendar days of receipt of the written PRC decision.  (DC-ADM 801, Section 5.B.1).  The inmate may then file a further appeal to the Office of the Chief Hearing Examiner within seven (7) calendar days of receipt of the Facility Manager's decision.  (DC-ADM 801, Section 5.C.3).  Once all of these steps are pursued, an inmate will be deemed to have exhausted administrative remedies.

On June 27, 2017, Defendant Brungart issued Saleem misconduct number C081856 for fighting and refusing to obey an order.  (Doc. 1 ¶ 30; Doc. 29, p. 3, Misconduct Number C081856).  The misconduct report states that both inmates were actively fighting with closed fists, they refused to obey orders to stop fighting, and O.C. spray was dispensed.  (Doc. 29, p. 3).  On June 28, 2017, Hearing Examiner Pilosi found Saleem guilty of the offenses of fighting and refusing to obey orders.  (Doc. 1 ¶¶ 31, 32; Doc. 29, p. 7).  Hearing

10

Examiner Pilosi sanctioned Saleem with placement in disciplinary custody. (Doc. 1 ¶ 32; Doc. 29, p. 7). On June 28, 2017, Saleem appealed the Hearing Examiner's decision. (Doc. 1 ¶¶ 33, 34; Doc. 29, p. 8). On July 6, 2017, the Program Review Committee, comprised of Defendants Houser, McMahon, and Miller, upheld the Hearing Examiner's decision. (Doc. 1 ¶ 35; Doc. 29, p. 11). Saleem appealed the PRC's decision to Superintendent Garman, who upheld the previous decisions. (Doc. 1 ¶ 36; Doc. 29, pp. 13-14). Saleem then filed an appeal to the Office of the Chief Hearing Examiner, Defendant DuPont. (Doc. 1 ¶ 37; Doc. 29, pp. 15-17). On appeal, Defendant DuPont found that the Hearing Examiner's decision was supported by "ample evidence", and he denied Saleem's appeal. (Doc. 29, p. 17). The record reflects that Saleem utilized DC-ADM 801 to fully exhaust his misconduct-related claim against Defendant Brungart.

Saleem also attempted to use DC-ADM 804 to grieve his misconduct claim against Defendant Brungart. On July 3, 2017, Saleem filed grievance number 685450 wherein he alleged that Defendant Brungart issued a false misconduct to him. (Doc. 13-3, pp. 3-4, Grievance Number 685450). On July 6, 2017, the grievance was dismissed because misconduct charges must be addressed under the DC-ADM 801 Inmate Discipline/ Misconduct Procedures. (*Id.* at p. 2).

The uncontroverted record reflects that Saleem did not file any other grievances related to the claims in the instant action or with respect to any claims against the named Defendants other than Brungart. (*See* Docs. 13-4, 13-5, 13-6, 13-7). DC-ADM 804 permits

any inmate to seek review of problems that may arise during the course of confinement. *See* 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen (15) days after the events upon which the claims are based. Within fifteen (15) days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen (15) days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

The PLRA mandates that inmates properly exhaust their administrative remedies before filing suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). It is well-settled that administrative remedies must be exhausted *prior* to the initiation of suit. *See Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit."); *Millbrook v. United States*, 8 F.Supp.3d 601, 611 (M.D. Pa. 2014) ("Dismissal of an inmate's claim is appropriate when

a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. '[E]xhaustion must occur prior to filing suit, not while the suit is pending.'") (citations omitted). Saleem did not do so in this case. Saleem filed one grievance related to the claims in this action, wherein he alleged that Defendant Brungart issued a false misconduct. (Doc. 13-3, Grievance Number 685450). Saleem did not file any other grievances related to the claims in this action. Saleem has not presented any evidence to refute these facts and has not asserted that he exhausted the administrative grievance relating to the claims presently pending before the Court, other than the misconduct-related claim against Defendant Brungart. (See Docs. 22, 22-1).

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. See, e.g., Camp, 219 F.3d at 281; Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). Recently, the Third Circuit Court of Appeals has held that "a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion." Shifflett v. Korszniak, 934 F.3d 356, 359 (3d Cir. 2019). The record simply does not support a finding that the administrative process was unavailable to Saleem. To the contrary, it establishes that Saleem had ready access to the administrative remedy process, and properly exhausted his misconduct-related claim

against Defendant Brungart. Furthermore, Saleem concedes that he fully exhausted two (2) other grievances (unrelated to the events alleged in this civil action) during the same time period while housed at SCI-Rockview. (Doc. 22, p. 7; Doc. 22-1, p. 9). It is quite clear that Saleem failed to exhaust administrative remedies with respect to his claims against Defendants Garman, McMahon, Houser, Glass, Miller, Pilosi, and Dupont before initiating the instant action. Saleem has not demonstrated that his failure to fully pursue such administrative relief should be excused.[2]

Moreover, Saleem is unable to overcome the glaring defect of failing to identify Defendants Garman, McMahon, Houser, Glass, Miller, Pilosi, and Dupont in grievance number 685450, the only grievance related to the claims in this action. In *Spruill*, the Court explained that the purpose of the DOC regulation related to exhaustion is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. *Spruill*, 372 F.3d at 234. Under *Spruill*, it is the plaintiff's burden to explain why he did not name a defendant in the grievance. *See id.* All that is necessary to defeat a procedural default is that the prison is able, from the initial grievance, to "identif[y] the unidentified persons and acknowledg[e]

---

[2] Saleem argues that he failed to exhaust grievance number 685450 because he was "stopped by prison officials." (Doc. 22, pp. 7-8). As stated, pursuant to DC-ADM 804, grievance number 685450 was dismissed because misconduct charges must be addressed under DC-ADM 801. (Doc. 13-3, pp. 3-4, Grievance Number 685450). It is undisputed that Saleem fully exhausted his misconduct claim under DC-ADM 801. Defendants do not argue that Saleem's claims stemming from grievance number 685450 should be dismissed due to failure to exhaust. Rather, Defendants argue that the claims stemming from grievance number 685450 should be dismissed based on failure to state a claim upon which relief can be granted. Thus, Saleem's argument that he was stopped by prison officials from exhausting grievance number 685450 has no bearing on the fact that he failed to file a single grievance related to any other claims in this civil action.

14

that they were fairly within the compass of the prisoner's grievance." *Williams*, 482 F.3d at 640 (quoting *Spruill*, 372 F.3d at 234).

In grievance number 685450, Saleem only names Correctional Officer Brungart and complains about the alleged false misconduct issued by Brungart. (Doc. 13-3, Grievance Number 685450). With respect to Defendants Garman, McMahon, Houser, Glass, Miller, Pilosi, and Dupont, it is undisputed that Saleem never named any of these Defendants in the grievance related to the misconduct. Saleem has offered no explanation as to why he failed to name Defendants Garman, McMahon, Houser, Glass, Miller, Pilosi, and Dupont in his grievance. (*See* Docs. 22, 22-1). The record establishes that Defendants Garman, McMahon, Houser, Glass, Miller, Pilosi, and Dupont reviewed Saleem's misconduct, grievance, and appeals. Saleem has failed to come forward with any information demonstrating these Defendants' knowledge of the incident outside of their review of the misconduct and grievance. Thus, there is no evidence in the record from which a factfinder could find that any actions of Defendants Garman, McMahon, Houser, Glass, Miller, Pilosi, and Dupont were "fairly within the compass" of the grievance. *Williams*, 482 F.3d at 640.

The undisputed evidence establishes that Saleem did not fully exhaust the available administrative remedies with respect to any claims against Defendants Garman, McMahon, Houser, Glass, Miller, Pilosi, and Dupont prior to initiating this action. Thus, as a threshold matter, Saleem's claims against these Defendants are barred on administrative exhaustion

grounds. There are also separate, and independent, substantive flaws with the claims against these Defendants. These deficiencies are discussed below.

## B. Failure to State a Claim

### 1. *Claims against Garman, McMahon, Houser, Glass, Miller, Pilosi, and Dupont*

Saleem's allegations that Defendants Garman, McMahon, Houser, Glass, Miller, Pilosi, and Dupont violated his rights merely because they supervised other Defendants, or because they allegedly failed to properly address his misconduct, grievance, and appeals, without more, are insufficient to show personal involvement by these prison officials absent some other evidence that these Defendants personally engaged in conduct that violated Saleem's constitutional rights.

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. .

16

. . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

To the extent that Saleem attempts to hold any of the Defendants liable based upon their supervisory roles within the prison, this claim is subject to dismissal. Saleem alleges that Defendants Glass, McMahon, and Garman should have been aware of the alleged constitutional mistreatment by virtue of their supervisory positions. (Doc. 1 ¶¶ 60, 65, 69, 79, 80, 115, 150, 158, 163). These claims are, in essence, nothing more than an assertion of *respondeat superior* liability which seeks to hold Defendants Glass, McMahon, and Garman liable based on their supervisory roles. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207. Saleem has not alleged facts to show that the supervisory Defendants committed actionable violations of his constitutional rights. Consequently, Defendants' motion to dismiss on the basis of lack of personal involvement will be granted.

It appears that Saleem also seeks to hold Defendants Garman, McMahon, Houser, Miller, Pilosi, and Dupont liable based upon their interference with, and hinderance of, the prison grievance system. (Doc. 22, pp. 7-8; Doc. 22-1, p. 10). This claim fails because inmates do not have a constitutionally protected right to a prison grievance system. *See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.*S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Speight v. Sims*, 283 F. App'x 880, 881 (3d Cir. 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")).

Nor can Saleem impose liability on Defendants Garman, McMahon, Houser, Miller, Pilosi, and Dupont based upon their roles in reviewing and responding to his misconduct, grievance, and appeals. It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond, to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct. *See Rode*, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that

allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

In accordance with the foregoing, any attempt by Saleem to establish liability against Defendants Garman, McMahon, Houser, Miller, Pilosi, and Dupont based upon their interference with the prison grievance system, or their handling of Saleem's misconduct, administrative grievances, complaints, or appeals does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005). Accordingly, Defendants' motion will be granted in this regard.

### 2. *Claims Against Brungart*

The only properly exhausted claim in this civil rights action is Saleem's claim that Defendant Brungart issued a false misconduct against him. The Fourteenth Amendment of the United States Constitution provides in pertinent part that: "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. CONST. amend. XIV. The filing of a false disciplinary misconduct alone does not violate a prisoner's constitutional rights, even if it may result in the deprivation of a protected liberty interest. *See Hutchinson v. Kosakowski*, 2015 WL 3737656, at *4 (M.D. Pa. 2015) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). However, inmates must be provided due process of law prior to being deprived of a protected liberty interest. *Id.* Accordingly, "so long as certain procedural requirements are satisfied, mere allegations of falsified evidence

or misconduct reports, without more, are not enough to state a due process claim." *Id.* (citing *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002); *Freeman*, 808 F.2d at 953).

The fact that Saleem was found guilty at a misconduct hearing is not in itself a due process violation. Due process protections attach in prison disciplinary proceedings in which the loss of good-time credits is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974). In *Wolff*, the Supreme Court held that an inmate must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). Because Saleem did not suffer a loss of good conduct time, the *Wolff* protections are inapplicable.

Moreover, the Due Process Clause does not provide protection against the imposition of discipline, including disciplinary confinement and the loss of various privileges inasmuch as these other forms of discipline do not "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Torres v. Fauver*, 292 F.3d 141, 150-51 (3d Cir. 2002) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Sandin*, 515 U.S. at 486; *see Griffin v. Vaughn*, 112 F.3d 703, 706-07 (3d Cir.

1997).  Because Saleem's thirty (30) days of disciplinary confinement did not impose an

atypical and significant hardship on him in relation to the ordinary incidents of prison life, his

due process claim arising out of disciplinary proceedings will be dismissed.

## IV.    Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must

generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview*

*State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile."  *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  The federal rules

allow for liberal amendments in light of the "principle that the purpose of pleading is to

facilitate a proper decision on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962)

(citations and internal quotations omitted).  For the reasons set forth above, the Court

concludes that granting leave to amend with respect to the misconduct-related claim against

Defendant Brungart would be futile.

## V.    Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with

the summons and copy of the complaint:

If a defendant is not served within 90 days after the complaint is filed, the
court -- on motion or on its own after notice to the plaintiff -- must dismiss the

action without prejudice against that defendant or order that service be made
within a specified time. But if the plaintiff shows good cause for the failure,
the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). The John Doe Defendants were named in the complaint that was filed

on December 31, 2018 and, to date, have not been identified or served in this case. The

Court must engage in a two-step process in determining whether to dismiss the non-served

Defendants or grant Saleem additional time to effect service. "First, the district court should

determine whether good cause exists for an extension of time. If good cause is present, the

district court must extend time for service and the inquiry is ended. If, however, good cause

does not exist, the court may in its discretion decide whether to dismiss the case without

prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298,

1305 (3d Cir. 1995). Good cause requires good faith on the part of the party seeking an

enlargement and some reasonable basis for noncompliance with the time specified in the

rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). In

determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons

for not complying with the time limit in the first place." *Id.* Although prejudice is a factor to

be considered, the absence of prejudice to the opposing party alone does not constitute

good cause to excuse late service. *Id.*

In the present matter, Saleem failed to establish good cause. Indeed, his response

to the rule to show cause merely cites to his *pro se* status and requests leniency and

additional time to identify and serve the John Doe Defendants. (Doc. 30). Saleem's reason

is a deflection, not a good faith explanation. Saleem's *pro se* status is not good cause to excuse his failure to timely identify or serve these Defendants. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004). Based upon the lack of any reasonable explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Saleem failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m). It is Saleem's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (*See* Doc. 7 ¶ 7) (advising Saleem that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Saleem's lack of good faith effort to identify or serve the John Doe Defendants despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the non-identified, non-served Defendants will be dismissed from this action.

## VI.    **Conclusion**

For the reasons set forth above, the Court will grant Defendants' motion (Doc. 12).

The Court will also dismiss the action against the John Doe Defendants pursuant to Federal

Rule of Civil Procedure 4(m).

A separate Order shall issue.

Dated: March __6__, 2020

_____

Robert D. Mariani
United States District Judge